## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES SIMMONS McVAUGH | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, | : | |
| Acting Commissioner of the Social | : | |
| Security Administration, | : | |
| Defendant | : | NO.  22-2105 |

### MEMORANDUM

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                                        April 25, 2023

Charles Simmons McVaugh ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner of the Social Security Administration ("the Commissioner"), denying his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act.  Plaintiff has filed a brief in support of his request for review, the Commissioner has responded to it, and Plaintiff has replied.  For the reasons set forth below, Plaintiff's request for review is granted.

### I.      PROCEDURAL HISTORY[1]

On October 5, 2020, Plaintiff applied for DIB, alleging disability, because of physical and mental health impairments, that commenced on July 7, 2020.  R. 10.  The claim was denied, initially and upon reconsideration; therefore, Plaintiff requested a hearing.  Id.  On November 3, 2021, due to COVID-19 precautions, Plaintiff appeared for a telephone hearing, before Robert J. Ryan, Administrative Law Judge ("the ALJ"); Plaintiff, represented by an attorney, and Bruce Martin, a vocational expert, ("the VE") testified at the hearing.  Id.  On February 7, 2022, the ALJ,

---

[1] The court has reviewed and considered the following documents in analyzing this case:  Plaintiff's Brief and Statement of Matters Complained of On Appeal ("Pl. Br."), Defendant's Response to Request for Review of Plaintiff ("Resp."), Plaintiff's Reply Brief ("Reply"), and the administrative record.  ("R.").

using the sequential evaluation process ("SEP") for disability,[2] issued an unfavorable decision. R. 10-23.  The Social Security Administration's Appeals Council denied Plaintiff's request for review, on March 30, 2022, making the ALJ's findings the final determination of the Commissioner.  R. 1-3.  Plaintiff now seeks judicial review and the parties have consented to this court's jurisdiction, pursuant to 28 U.S.C. § 636(c)(1).

## II.    FACTUAL BACKGROUND

### A.    Personal History

Plaintiff, born on January 15, 1981, R. 22, was 41 years old on the date of the ALJ's decision.  He is a combat veteran, R. 52-53, who has lived with a service dog since 2014.  R. 46-47.  Plaintiff frequently sees his son, who is in the first grade of school.  R. 47, 53.  He last worked in 2017.  R. 51.

### B.    Plaintiff's Testimony

At the administrative hearing, Plaintiff testified about his mental and physical limitations.

---

[2] The Social Security Regulations provide the following five-step sequential evaluation for determining whether an adult claimant is disabled:

> 1.  If the claimant is working, doing substantial gainful activity, a finding of not disabled is directed.  Otherwise proceed to Step 2.  *See* 20 C.F.R. § 404.1520(b).

> 2.  If the claimant is found not to have a severe impairment which significantly limits his physical or mental ability to do basic work activity, a finding of not disabled is directed.  Otherwise proceed to Step 3.  *See* 20 C.F.R. § 404.1520(c).

> 3.  If the claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed.  Otherwise proceed to Step 4.  *See* 20 C.F.R. § 404.1520(d).

> 4. If the claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed.  Otherwise proceed to Step 5.  *See* 20 C.F.R. § 404.1520(f).

> 5.  The Commissioner will determine whether, given the claimant's residual functional capacity, age, education, and past work experience in conjunction with criteria listed in Appendix 2, she is or is not disabled.   *See* 20 C.F.R. § 404.1520(g).

R. 40-55.  Plaintiff stated that the main reason he was unable to work was his inability to leave his home, *i.e.*, his mental health problems.  R. 54.  He is hypervigilant when out in public.  R. 50. Loud sounds or certain smells remind him of his war-time military service and trigger panic attacks and bad reactions.  R. 50.  For example, at his brother's wedding reception, he heard a loud noise and dropped to the ground, shattering the glass he was holding.  R. 51.  Plaintiff sleeps poorly, because of frequent nightmares.  R. 50.  Additionally, he is easily distracted and has difficulty completing tasks.  R. 53.

Plaintiff explained that he does not like to be around and consciously avoids strangers; hence, he never attends movies and rarely dines at a restaurant.  R. 52.  He attends church services online, rather than in person.  R. 52.  However, Plaintiff does attend his son's karate classes and visit his girlfriend, at her parent's home.  R. 47.  To help manage his post-traumatic stress disorder ("PTSD") symptoms, Plaintiff takes his service dog wherever he goes.  R. 47.  Additionally, he attends individual therapy once a week and group therapy approximately twice per week, for his PTSD.  R. 47.

Petitioner also suffers from physical ailments.  As a result of his traumatic brain injury ("TBI"), Plaintiff has right-side limitations; he walks with a limp and has reduced right-side grip strength.  R. 48.  Furthermore, Plaintiff uses assistive devices in the shower, so he does not have to bend over.  R. 49.

C.    Vocational Testimony

In addition to his military service, Plaintiff has a long work history; he has performed various jobs at several skill and exertional levels.  The VE characterized his past jobs as follows:

retail sales jobs were light,[3] semi-skilled work;[4] security system monitor position was sedentary,[5] unskilled;[6] security guard was light; customer service representative was a light, skilled[7] position; physical therapy assistant was a medium,[8] skilled position; restaurant manager was a light, skilled job; and forklift operator was medium, semi-skilled work.  R. 56-57.

The ALJ declined to pose any hypothetical questions to the VE, deferring to Plaintiff's attorney.  R. 57.  Plaintiff's attorney asked the VE to consider an individual of Plaintiff's age, education and past work experience, with additional limitations of:  difficulty completing tasks, inability to complete a two hour work schedule, because of problems caused by PTSD; being off-task 15% of the time; inability to be around people; trouble dealing with coworkers and bosses; needing to seclude himself for 15 to 20 minutes at least once a day, in addition to normal breaks; and limited to simple, routine tasks.  R. 57-58.  The VE opined that this person could not perform any of Plaintiff's past jobs.  R. 58.  Furthermore, the VE opined that a person who was off-task more than 10% of the time could not sustain any competitive employment; hence, the hypothetical individual could not perform any work  R. 58-59.  Being unable to tolerate contact with coworkers and the public would also be work-preclusive.  R. 59.  The VE opined that a service dog would be

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 404.1567(b).

[4] "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties."  20 C.F.R. § 404.1568(b).  It is less complex than skilled work but more complex than unskilled work.  *Id.*  "A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks."  *Id.*

[5] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary to carry out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567(a).

[6] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.  The job may or may not require considerable strength . . . [a] person does not gain work skills by doing unskilled jobs."  20 C.F.R. § 404.1568(a).

[7] "Skilled work requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced.  . . . Other skilled jobs may require dealing with people, fact, or figures or abstract ideas at a high level of complexity."  20 C.F.R. § 404.1568(c).

[8] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. § 404.1567(c).

allowed in a protected work environment.  R. 59.  Finally, the VE confirmed that his testimony

was consistent with the Dictionary of Occupational Titles ("the DOT"), except that his testimony

about off-task limitations and inability to interact with others, was not covered in the DOT, but

was based upon his experience as a vocational rehabilitation counselor and employment manager.

R. 59-60.

### III.      THE ALJ's FINDINGS

In his decision, the ALJ issued the following findings:

1.      [Plaintiff] meets the insured status requirements of the Social Security Act through June 30, 2022.

2.      [Plaintiff] not engaged in substantial gainful activity since July 7, 2020, the alleged onset date (20 CFR 404.1571 *et seq.*).

3.       [Plaintiff] has the following severe impairments: obesity and exostosis of his left knee (20 CFR 404.1520(c)).

4.       [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5.      After careful consideration of the entire record, the undersigned finds that, [Plaintiff] had the residual functional capacity to perform the full range of medium work as defined in 20 CFR 404.1567(c).

6.       [Plaintiff] is able to perform past relevant work as generally performed (20 CFR 404.1565).

7.      [Plaintiff] was born on January 15, 1981 and was 39 years old, which is defined as a younger individual age 18 to 49, on the alleged disability onset date (20 CFR 404.1563).

8.      [Plaintiff] has at least a high school education (20 CFR 404.1564).

9.      Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not

disabled," whether or not [Plaintiff] has transferrable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.    Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform (20 CFR 404.1569, 404.1569(a)).

11.    [Plaintiff] has not been under a disability, as defined in the Social Security Act, from July 7, 2020, through the date of this decision (20 CFR 404.1520(g)).

R. 12-13, 17-18, 21-23.

## IV.  DISCUSSION

### A.  <u>Standard of Review</u>

Judicial review of the Commissioner's final decision is as follows. The Commissioner's findings of fact will not be disturbed if they are supported by substantial evidence. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). Substantial evidence is not "a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation omitted). While it is more than a mere scintilla of evidence, *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), it may amount to less than an evidentiary preponderance. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Overall, this test is deferential to the ALJ and the court should affirm the ALJ's findings of fact that are supported by substantial evidence, even when the court, acting *de novo,* might have reached a different conclusion. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987). Indeed, the court is not permitted to weigh the record evidence itself. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). By contrast, the Commissioner's

legal conclusions are subject to *de novo* review.  *Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at 431.

B.     Burden of Proof in Disability Proceedings

To be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).  Plaintiff may establish a disability through: (1) medical evidence meeting one or more of the serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (2) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy."  *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments.  *Heckler*, 461 U.S. at 460.  Under the second method, Plaintiff must initially demonstrate that a medically determinable impairment prevents him from returning to his past employment.  *See Brown*, 845 F.2d at 1214.  If Plaintiff proves that his impairment results in functional limitations to performing his past relevant work, then the burden of proof shifts to the Commissioner to prove that work does in fact exist in the national economy which Plaintiff can perform given his age, education, work experience and residual functional capacity.  *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Poulos,* 474 F.3d at 92.

C.     Review of the Administrative Law Judge's Decision

Applying the sequential evaluation process, the ALJ determined that Plaintiff could perform his past relevant work as well as other medium jobs that exist in the national economy

and, hence, was not disabled.  R. 10-23.  Plaintiff disputes the ALJ's decision and argues that the ALJ reversibly erred by failing to include in the residual functional capacity ("RFC") assessment any limitations from his documented PTSD and TBI.  Pl. Br. at 3-29.  The Commissioner denies Plaintiff's assertions.  Resp. at 1-12.  This court finds that the Plaintiff's complaints about the ALJ's assessment of his RFC are valid and this case is remanded.

In this case, Plaintiff testified that his mental health limitation was the most significant reason he could not work.  R. 54.  Despite this, and despite stating that he would consider Plaintiff's non-severe PTSD when assessing Plaintiff's RFC, R. 16, the ALJ's RFC assessment is devoid of any limitations related to Plaintiff's PTSD.  Instead, the ALJ simply found that Plaintiff has the RFC "to perform the full range of medium work as defined in 20 CFR 404.1567(c)."  R. 18.  Because the ALJ asserted that he would include PTSD-related limitations in the RFC assessment and then clearly failed to do so, his decision is flawed.  This court is not free to search the record and supply reasons why the ALJ might have said he would do one thing and then failed to do it.  *See Fargnoli*, 247 F.3d at 44 n.7 (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943)).

This case is remanded so that the ALJ can reconsider whether he intends to include PTSD-related limitations in the RFC assessment.[9]  If the ALJ will not credit Plaintiff's psychological limitations, he must explain why.  If he will, then he must actually do so, by rendering an RFC that includes said limitations.

An implementing order and order of judgment follow.

---

[9] This court notes that, when Plaintiff's attorney formulated a hypothetical RFC that included PTSD-related limitations, the VE opined, contrary to the ALJ's conclusion, that a person with that RFC could not perform Plaintiff's past work, or any other work.  R. 57-59.